```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
```

HOWARD MILKS,

                Plaintiff,

v.                                                         3:13-CV-1571
                                                                  (GTS)

CAROLYN W. COLVIN,

                Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

LACHMAN & GORTON                     PETER A. GORTON, ESQ.,
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.          VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Howard Milks ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) are the parties' briefs, as well as Plaintiff's reply brief. (Dkt. Nos. 15, 21, 22.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted in part and denied in part[1] and Defendant's motion for remand is granted.

---

[1] Plaintiff's motion is denied to the extent he seeks reversal with remand for calculation of benefits only, but is granted to the extent he seeks remand for further proceedings consistent with this Decision and Order.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 30, 1961. He left school in the eighth grade but later earned a general equivalency diploma. Plaintiff has a limited work history that includes nine months of employment as a machine milker on a dairy farm. Generally, Plaintiff's alleged disability consists of borderline intellectual functioning, diabetes, degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, obesity, a cardiac condition, kidney impairment, left shoulder pain, hepatitis C, hand tremors, high blood pressure, sleep apnea, fibromyalgia, depression and marijuana abuse. Plaintiff's alleged disability onset date is April 9, 2003.

### B. Procedural History

On October 25, 2004, Plaintiff applied for Supplemental Security Income (SSI). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 20, 2006, Plaintiff appeared at a hearing before the ALJ, Elizabeth W. Koennecke. (T. 263-283.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on September 18, 2006. (T. 8-21.) After the Appeals Council denied Plaintiff's request for review, Plaintiff timely commenced an action before this Court. *See Milks v. Barnhart*, No. 3:06-CV-1410 (LEK/RFT). On consent of the parties, the action was remanded to the Commissioner and on December 3, 2007, the Appeals Council remanded the action to ALJ Koennecke for further administrative proceedings.

On November 19, 2008 and April 6, 2009, hearings were held before the ALJ. In addition, Plaintiff deposed treating physician Maria Galu, M.D. on November 18, 2008. (T. 703-814, 696-702.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on June 16, 2009. (T. 290-302.) Once again, the Appeals Council denied Plaintiff's

request for review and Plaintiff timely commenced an action before this Court. *See Milks v. Comm'r of Soc. Sec.*, No. 3:11-CV-0502 (GTS/DRH). Again, on consent of the parties, the action was remanded to the Commissioner and on October 5, 2012, the Appeals Council remanded the action to an ALJ for further administrative proceedings.

On June 19, 2013, a hearing was held before ALJ, Edward I. Pitts. (T. 1191-1232.) On October 17, 2013, the ALJ issued a written decision finding Plaintiff not disabled, which subsequently became the final decision of the Commissioner. (T. 815-843.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 821-837.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (T. 821.) Second, the ALJ found that Plaintiff's borderline intellectual functioning, diabetes (as of July 17, 2007), degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, obesity, and a cardiac condition (as of August 5, 2008, but this impairment became "non-severe" in less than 12 months) are severe impairments, but that Plaintiff's kidney impairment, left shoulder pain, hepatitis C, hand tremors, high blood pressure, sleep apnea, fibromyalgia, and depression with marijuana abuse are not severe. (T. 821-826.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 826-828.) The ALJ considered Listings 1.02, 1.04, 4.00, 5.00, 11.00, 12.00, and 12.05. Fourth, the ALJ found that

> from the alleged onset date of April 9, 2003 through July 16, 2007, [Plaintiff] had the residual functional capacity [RFC] to lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8 hour workday, stand/walk for 6 hours in an 8 hour workday, occasionally engage in postural activities and had no significant limitations on his abilities to reach, handle, finger and feel with the upper extremities. As to his mental [RFC] throughout the entire period since the onset date of April 9, 2003, [Plaintiff] can perform the basic mental demands of unskilled work which include the abilities to understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers and usual work situations and deal with changes in a routine work setting. As of July 17, 2007, [Plaintiff] can lift/carry 10 pounds occasionally, sit for 6 hours in an 8 hour workday, stand/walk for 2 hours in an 8 hour workday, can occasionally engage in postural activities and has no significant limitations on reaching, fingering, handling and feeling with the upper extremities.

(T. 828-835.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 835.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 835-837.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ did not sustain his burden of proving that there are a significant number of jobs in the national, state or local economy that Plaintiff can perform. (Dkt. No. 15 at 8-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ did not properly assess the treating doctor's opinion especially for the period after July 17, 2007 when there is no other or different medical opinion and specifically as to the critical factors of absenteeism and the capacity to stay on task throughout the work day. (*Id.* at 13-17.) Third, and finally, Plaintiff argues that the ALJ erred in failing to find any psychiatric or mental condition to be severe or any functional limitations as a result therefrom. (*Id*. at 17-19.)

4

In response, Defendant makes two arguments in support of her motion for remand. First, Defendant argues that remand for further administrative proceedings is appropriate. (Dkt. No. 21 at 2-7 [Def.'s Mem. of Law].) Second, and finally, Defendant argues that a remand for an award of benefits is not warranted because Plaintiff was not disabled during the relevant period. (*Id.* at 7-9.)

In reply to Defendant's motion for remand, Plaintiff concedes that remand for administrative proceedings is appropriate for the period prior to July 17, 2007 but argues that remand for calculation of benefits should be ordered for the period from July 17, 2007 through May 1, 2001. (Dkt. No. 22 at 1-4 [Pl.'s Reply Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). Pursuant to the Contract with America Advancement Act, "[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage*, 692 F.3d at 123 (citing Pub. L. 104-121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c (a)(3)(J))). Therefore, the ALJ must decide "[t]he critical question" of "whether . . . [the claimant would still be] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). It is the claimant who bears the burden of proof on the issue of whether her drug addiction or alcoholism is material. *See Cage*, 692 F.3d at 123-125.

7

## IV.   ANALYSIS

### A.   Whether the ALJ Erred in Failing to Find Plaintiff's Psychiatric or Mental Condition Severe

After carefully considering the matter, the Court answers this question in the negative. The Court would add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of his condition. *See* 20 C.F.R. § 416.912(a); *Bowen*, 482 U.S. at 146.

When applying the "special technique" used to determine whether a mental impairment is severe, the ALJ must first decide whether the claimant has a medically determinable impairment. After that threshold is met, the ALJ must then evaluate the rate of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 416.920a(c)(3); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 247 (N.D.N.Y. 2010). Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). The fourth area is rated on a scale of "[n]one, one or two, three, four or more." *Id.* "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no

8

episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265, 266 (2d Cir.2008)). "Pursuant to the regulations, the ALJ's written decision must 'reflect application of the technique, and ... include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Id.* (quoting *Kohler*, 546 F.3d at 266 (quoting 20 C.F.R. § 416.920a(e)(2))).

Here, the ALJ found that Plaintiff's borderline intellectual functioning is severe. (T. 821.) In support of this finding, the ALJ cited intelligence testing from December 2004, which reveals that Plaintiff is in the range of borderline intelligence. (T. 825.) Regarding Plaintiff's other alleged psychiatric limitations, the ALJ discussed Plaintiff's sparse psychiatric treatment records and his history of substance abuse. (T. 825-826.) However, the ALJ did not include a specific finding regarding Plaintiff's limitation in each of the functional areas set forth in 20 C.F.R. § 416.920a(c)(4).[2]

Where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010). *See also* 20 C.F.R. § 416.923 (ALJ required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such

---

[2] To be sure, at step three, the ALJ purported to apply the psychiatric technique before determining that "the severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal" a listing. (T. 826.) In doing so, the ALJ noted Plaintiff has mild restriction in activities of daily living attributable to his physical impairments, rather than his mental impairments. The ALJ further found that Plaintiff has mild difficulties in social functioning and no episodes of decompensation. (T. 827.) Finally, the ALJ found Plaintiff has moderate difficulties with concentration, persistence or pace stemming from his borderline intellectual functioning.

9

impairment, if considered separately would be of sufficient severity"). Here, the ALJ did not deny benefits based on the lack of a severe impairment. Moreover, it is clear that the ALJ did consider Plaintiff's psychiatric impairments in the reminder of his decision. (T. 834-835.) Accordingly, the ALJ's failure to apply the psychiatric technique regarding Plaintiff's psychiatric impairments at step two of the sequential analysis is harmless error. *Cf. Ellis v. Comm'r of Soc. Sec.*, No. 11-CV-2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012). Therefore, remand is not necessary on this basis.

### B. Whether the ALJ Properly Weighed the Opinion of Plaintiff's Treating Physician

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 7-9 [Def.'s Mem. of Law].) The Court would add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Here, on July 13, 2006, Plaintiff's treating physician, Maria Galu, M.D., opined that, for the period November 21, 2004 through July 13, 2006, Plaintiff "requires complete freedom to rest frequently without restriction[,] . . . can sit for less than six hours out of an eight hour day AND needs to alternate positions between sitting and standing[,] . . . [i]s not able to stand for two hours out of an eight hour day[,]" and should not climb, balance, stoop, crouch, kneel or crawl at all. (T. 220-223.) Finally, Dr. Galu opined, these limitations have a moderate effect on Plaintiff's ability to concentrate and sustain work pace. (T. 223.) At a November 18, 2008 deposition, Dr. Galu testified that Plaintiff's condition was "much worse" at that time than it was in July 2006 and that consequently, his limitations were even worse than they were in July 2006. (T. 697.)

Plaintiff argues that the ALJ erred in assigning little weight to Dr. Galu's opinion because (1) there is no other medical opinion for the time period at issue other than the December 2004 opinion of Dr. Datta and (2) Dr. Galu saw Plaintiff a total of thirty times during the relevant period. However, the ALJ explained that he gave little weight to Dr. Galu's opinions because they are inconsistent with her treatment notes, which he supported with examples spanning from 2006 to 2008. (T. 832-833.) Further, the ALJ explained, Dr. Galu's opinion is not supported by other evidence in the record, including the opinions of consultative examiners, Pranab Datta, M.D. and Mary Ann Moore, Psy. D. (T. 834.) Clearly the ALJ considered the length of Plaintiff's treatment relationship with Dr. Galu, given the detailed summary of her treatment records. Moreover, the ALJ considered the lack of record evidence supporting the opinion as well as its inconsistency with the opinions of Dr. Datta and Dr. Moore as well as Dr. Galu's own treatment notes.

11

Therefore, the ALJ did not err in assigning little weight to the July 2006 and November 2008 opinions of Dr. Galu. Consequently, because the ALJ did not err in assigning little weight to Dr. Galu's opinion, remand is not necessary on this basis.

**C.    Whether the ALJ Satisfied His Burden of Proving That There Are a Significant Number of Jobs in the National Economy That Plaintiff Can Perform**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in the parties' memoranda of law. (Dkt. No. 15 at 8-13 [Pl.'s Mem. of Law]; Dkt. No. 21 [Def.'s Mem. of Law]; Dkt. No. 22 [Pl.'s Reply Br.].) The Court would only add the following analysis.

Both parties agree that the ALJ did not satisfy his burden at step five of the sequential analysis to prove that there are a significant number of jobs in the national, state or regional economy that Plaintiff can perform. Both parties also agree that remand for further administrative proceedings is appropriate with regard to the period between October 25, 2004 and July 16, 2007. However, Plaintiff argues that remand solely for calculation of benefits is appropriate for the period between July 17, 2007 and April 30, 2011, citing *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000) for support. In *Curry v. Apfel*, the Court of Appeals for the Second Circuit remanded for the sole purpose of calculating benefits where the Commissioner failed to sustain his burden at step five of the sequential analysis and where the Commissioner's finding that the plaintiff can engage in sedentary work was not supported by substantial evidence. *See Curry*, 209 F.3d at 124, *superceded by statute on other grounds*, 20 C.F.R. § 416.960(c)(2). Here, unlike in *Curry*, the Commissioner's finding that Plaintiff retains the RFC for sedentary work between July 17, 2007 and April 30, 2011 is supported by substantial evidence. Therefore, Plaintiff's request for remand solely for calculation of benefits is denied. Instead, this case is more appropriately remanded for further administrative proceedings.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for remand (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: January 5, 2015
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge